AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

United States of America
v.

GUSTAVO B. MINGO and
SABASTIAN A. MEDINA

_____
*Defendant(s)*

)
)
)
)
)
)
)

Case No.   **8:16 MJ 1 4 3 2 TBM**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 1, 2016 _____ in the county of _____ Sarasota _____ in the

_____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 472 | Uttering counterfeit obligations or securities |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Richard Dean, Special Agent, U.S. Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   7-12-16

_____
*Judge's signature*

City and state:   Tampa, Florida

THOMAS B. MCCOUN III, U.S. MAGISTRATE
*Printed name and title*

## AFFIDAVIT

I, Richard M. Dean, being duly sworn, depose and state the following:

### INTRODUCTION AND BACKGROUND

1.      I make this affidavit for the purpose of supplying probable cause to support a criminal complaint against SABASTIAN A. MEDINA and GUSTAVO B. MINGO for violations of Title 18, United States Code, Section 472, Uttering Counterfeit Obligations or Securities.

2.      I am a Special Agent with the United States Secret Service (USSS) and have been employed by the USSS as a Special Agent since July 2002. I am currently assigned to the Tampa Field Office. As a Special Agent with the USSS, I have the authority to conduct criminal investigations, execute search warrants, and make arrests in cases involving violations of Federal criminal law. I have received training in investigating financial crimes, including the recognition of counterfeit currency, and have experience investigating violations of federal laws including counterfeit currency, bank fraud, wire fraud, mail fraud, among other federal criminal offenses.

3.      The information obtained to date establishes probable cause to support that MEDINA and MINGO, in the Middle District of Florida and elsewhere, with intent to defraud, did pass and utter, and with like intent did bring into the United States and keep in their possession and conceal, falsely made or counterfeited obligation or securities of the United States, in violation of Title 18, United States Code, Section 472.

4.     The statements contained in this affidavit are based on your affiant's personal knowledge, information obtained by your affiant, information collected and analyzed by other Special Agents and other agencies participating in this investigation, and information that has been reviewed by your affiant.  This affidavit does not set forth every fact resulting from the investigation; rather, it sets forth facts sufficient to establish probable cause to charge MEDINA and MINGO with Uttering Counterfeit Obligations or Securities, in violation of Title 18, United States Code, Section 472.

## FACTS ESTABLISHING PROBABLE CAUSE

5.     On or about May 2, 2016, Walmart Asset Protection Officer M.V. contacted the Sarasota County Sheriff's Office (SCSO) Detective Carlos Verdoni and requested assistance investigating two individuals suspected of passing counterfeit $50 and $100 U.S. bills at a Walmart store in the Sarasota area. According to M.V., two males entered a Walmart store located at 4381 Cattlemen Rd., Sarasota, FL, during the weekend prior and passed counterfeit bills. M.V. further stated in substance that both males appeared to be Hispanic; one of the males involved in the uttering of counterfeit bills was described as an older bald male with a tattoo of an eyeball on the back of his neck. M.V. described the second male as younger with dark hair, possibly in his thirties. M.V. obtained store surveillance photos of these two individuals and the car in which they traveled, which M.V. provided to law enforcement.  M.V. also provided the suspected counterfeit bills for inspection by law enforcement.

2

6.      On or about the same date, law enforcement agents did a search of a USSS database for information related to the suspected counterfeit notes identified at the 4381 Cattlemen Rd., Sarasota, FL Walmart, as described above. The search revealed that similar notes of the same denomination and with the same serial number had been confirmed counterfeit and had been passed in the Sarasota area during the same dates at multiple locations, including at area Walmart, Best Buy, and other stores.

7.      On or about May 3, 2016, M.V. contacted Detective Verdoni and reported that he and others at Walmart had detained one male subject, identified as Sebastian Alfredo MEDINA, in custody at a store located at 4381 Cattlemen Rd., Sarasota, FL, on suspicion of uttering counterfeit currency.  M.V. further advised that the subject in custody was believed to be responsible for other recent uttering cases of counterfeit money at other stores in the area based on surveillance video of recent transactions at those stores.   M.V. further stated that suspected counterfeit currency had been recovered from MEDINA, who uttered the bills at the register.

8.      Detective Verdoni responded to the Walmart at 4381 Cattlemen Rd., Sarasota, FL, to examine the suspected counterfeit bills and review surveillance video.  Detective Verdoni observed MEDINA on surveillance video texting via cell phone and passing the suspected counterfeited bills, which were retained by Walmart and made available for law enforcement analysis.  The suspected counterfeit currency was subsequently analyzed and determined to be

3

counterfeit based on, inter alia, the following observations: the bills were not printed on genuine U.S. currency paper stock and instead consisted of two glued sheets; the bills lacked intaglio printing; the Federal Reserve Bank branches to which the bills were supposedly issued did not correspond to the notes' serial numbers, the second alphanumeric character of which should match the assigned character of the branches identified on each note's face; the watermarks were printed simulations; the inscribed security threads did not glow the appropriate colors when placed under ultraviolet lights; and the bills lacked the red and blue fibers embedded throughout genuine U.S. currency. Detective Verdoni then interviewed MEDINA after reading MEDINA his *Miranda* rights and receiving from MEDINA a knowing, voluntary and intelligent waiver of those rights. During that interview, MEDINA stated in substance that he had passed a significant amount of counterfeit United States currency. MEDINA also stated in substance that he and his uncle had rented a car in Miami, driven to Sarasota, and rented a room at the Allamanda Motel. MEDINA further stated in substance that his uncle had brought him to the Walmart where he was currently being detained to make purchases with the counterfeit currency. An internet search located the Allamanda Motel at 4014 N. Tamiami Trail, Sarasota, FL 34234. MEDINA was then placed under arrest and transported to the SCSO for further interviewing.

9.      Through further investigation of the video surveillance along with the interview of MEDINA, a second male subject was identified. The person was

identified by MEDINA as his uncle. This suspect was captured on surveillance video dropping off MEDINA in a newer four-door vehicle, possibly a gray Nissan Sentra. The individual was described by M.V. as a male of fair complexion who was bald or balding and had a tattoo of an eyeball on the back of his neck. This description matched the description of the suspect previously captured on surveillance video uttering bills in the Cattlemen Rd. Walmart on or about May 1, 2016.

10.     Law enforcement officers responded to the area of the Allamanda Motel and observed a vehicle and subject matching that of the suspect and suspect vehicle described herein pull out of the Cadillac Motel, which was located directly across the street from the Allamanda Motel.

11.     The vehicle was identified during surveillance as a 2016 grey Nissan Sentra bearing FL tags CDNX23, registered to P7P Family Auto Rental Corporation, 3900 NW 25th Street, Suite 408, Miami, FL, 33142. The renter of record with the rental car company was Gustavo Bernardo MINGO. This information matches the statement given by the in-custody suspect, MEDINA that the vehicle was rented out of Miami.

12.     Based on the matching description of the suspect and suspect vehicle, the origin of the rented vehicle, and other information obtained during the investigation above, a temporary investigative stop of the vehicle was conducted by law enforcement officers on the scene. The driver advised he did not speak any English. The subject provided an Argentinian driver's license and passport

featuring the name of Gustavo MINGO.  Officers on the scene observed that MINGO had a tattoo of an eyeball on the back of his neck and was bald, matching the description provided by M.V.  A room key was seen in the car in plain view for the Cadillac Motel.  Gustavo MINGO was detained and driven to the SCSO for questioning.

13.     Continuing on or about May 3, 2016, Detective Verdoni and your affiant interviewed MEDINA at the SCSO Criminal Investigations Section.  After providing a knowing, voluntary, and intelligent waiver of his *Miranda* rights, MEDINA stated in substance that he was aware the bills in his possession and that he had uttered were counterfeit.  MEDINA further stated in substance that he had purchased them from a street peddler in Mara Plata, Argentina, for 7 pesos on the dollar.

14.     Also on or about May 3, 2016, Detective Verdoni and your affiant interviewed MINGO.  After advising MINGO of his *Miranda* rights and obtaining a knowing, voluntary, and intelligent waiver of those rights, MINGO stated in substance that he had traveled to the United States from Argentina with MEDINA to pass $20,000 in counterfeit U.S. Currency.  MINGO further stated in substance that the remaining counterfeit currency that they had not yet passed was in the trunk of the rental car and there was genuine currency in the hotel room from their transactions.

15.     Law enforcement officers made contact with management at the Cadillac Motel, and confirmed that Gustavo Bernardo MINGO rented room #127 earlier in the day on or about May 3, 2016.

16.     Later on or about May 3, 2016, law enforcement officers obtained a state search warrant for the suspects' hotel room at the Cadillac Motel, Room #127, 4021 N. Tamiami Trail, Sarasota, FL, 34234. Law enforcement officers seized approximately $4,180 in genuine U.S. currency, Walmart receipts, and clothing that matched video surveillance footage of the transactions in which the two suspects were seen passing suspected counterfeit currency.

17.     Also on or about May 3, 2016, law enforcement officers obtained a state search warrant for the 2016 grey four door Nissan Sentra with Florida tag CDNX23. Searching agents seized approximately $3,800 in suspected counterfeit currency and $8,977 in genuine U.S. currency, along with items believed to be bought with counterfeit currency. The suspected counterfeit currency was subsequently analyzed and determined to be counterfeit based on, inter alia, the following observations: the bills were not printed on genuine U.S. currency paper stock and instead consisted of two glued sheets; the bills lacked intaglio printing; the Federal Reserve Bank branches to which the bills were supposedly issued did not correspond to the notes' serial numbers, the second alphanumeric character of which should match the assigned character of the branch identified on each note's face; the watermarks were printed simulations; the inscribed security threads did not glow the appropriate colors when placed

under ultraviolet lights; and the bills lacked the red and blue fibers embedded throughout genuine U.S. currency.

18.     On or about May 27, 2016, Detective Verdoni received a call from Special Agent Abreau (Homeland Security Investigations) in reference to Gustavo MINGO. SA Abreau stated that MINGO had requested to speak with a federal agent while in custody, and since MINGO was on an Immigration Customs Enforcement detainer, SA Abreau was contacted.  SA Abreau responded and interviewed MINGO in the presence of MINGO's defense attorney.  During that interview, MINGO stated in substance there was a hidden compartment in the suitcase that MINGO and MEDINA had brought from Argentina, which contained an additional $80,000 in counterfeit U.S. currency. MINGO advised Abreau that he did not provide this information during earlier interviews conducted on the day of his arrest.

19.     MINGO advised Abreau that he had arrived in Miami with three other people (one being MEDINA). There, they had purchased cell phones and clothing with counterfeit money and rented a vehicle, the gray Nissan Sentra bearing Florida tag CDNX23.

20.     On or about June 1, 2016, a second search warrant was executed by Detective Verdoni of the gray Nissan Sentra bearing Florida tag CDNX23. Seized from the interior plastic protective liner of the suitcase inside was $78,800 in Federal Reserve Notes believed to be counterfeit, this based upon MINGO's statements described above.  The suspected counterfeit currency was

8

subsequently analyzed and determined to be counterfeit based on, inter alia, the following observations: the bills were not printed on genuine U.S. currency paper stock and instead consisted of two glued sheets; the bills lacked intaglio printing; the Federal Reserve Bank branches to which the bills were supposedly issued did not correspond to the notes' serial numbers, the second alphanumeric character of which should match the assigned character of the branch identified on each note's face; the watermarks were printed simulations; the inscribed security threads did not glow the appropriate colors when placed under ultraviolet lights; and the bills lacked the red and blue fibers embedded throughout genuine U.S. currency. An additional $450 in counterfeit U.S. currency was also recovered from inside a shoe that was in the suitcase.

## CONCLUSION

21.     As set forth above, there is probable cause to support that both SABASTIAN A. MEDINA and GUSTAVO B. MINGO, with fraudulent intent, passed and uttered, and with like intent brought into the United States and concealed, counterfeited United States currency in the middle District of Florida beginning on an unknown date, but no later than April 2016, through and including at least May 2016, in violation of Title 18, United States Code, Section 472. These facts on which this conclusion is based include but are not limited to: observations of both subjects by store personnel, review of store video surveillance footage and related transaction records, examination of bills passed during such transactions, the recovery from their vehicle of counterfeit bills

matching ones passed in the aforementioned transactions, and admissions by both subjects during post-*Miranda* interviews.  Based on all of the facts stated in this affidavit, your affiant requests an arrest warrant be issued for both subjects for violations of Title 18, United States Code, Section 472.

This concludes my affidavit.

Richard Dean, Special Agent
United States Secret Service

Sworn to and subscribed before me this ⟨12⟩day of July, 2016.

THOMAS B. MCCOUN III
UNITED STATES MAGISTRATE JUDGE

\\usaflmsfile21\Users\_Cases\Criminal Cases\M\MINGO, Gustavo_2016R01238_EKG\x_Mingo-Medina arrest warramt affidavit_FINAL.docx

10